IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| STEVEN REX HUBER,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>MAESER WATER IMPROVEMENT<br>DISTRICT, DUSTIN McCORMICK, and<br>BRANDEN LAMMERT,<br><br>　　　　　　　Defendants. | MEMORANDUM DECISION AND<br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR TEMPORARY<br>RESTRAINING ORDER AND<br>PRELIMINARY INJUNCTION<br><br>Case No. 2:26-CV-00051-TS-CMR<br><br>Judge Ted Stewart<br>Magistrate Judge Cecilia M. Romero |

This matter is before the Court on *pro se* Plaintiff Steven Huber's Motion for a

Temporary Restraining Order and Preliminary Injunction.[1] For the reasons discussed below, the

Court will deny the Motion.

## I.  BACKGROUND

Plaintiff was hired on February 14, 2022, by Defendant Maeser Water Improvement

District ("MWID") as a seasonal equipment operator and laborer working in the water and sewer

departments. MWID is a special district that operates pursuant to the Water Conservancy District

Act,[2] the purpose of which is to provide for the conservation and development of water and land

resources within Utah.[3] Defendant Dustin McCormick ("McCormick") is, and was, district

manager for MWID during all relevant times; Defendant Branden Lammert ("Lammert") is, and

was, assistant manager during all relevant times (MWID, McCormick, and Lammert are

---

[1] Docket No. 2.

[2] Utah Code Ann. § 17B-2a-1001 *et seq*.

[3] *Id*. § 17B-2a-1002.

collectively referred to as "Defendants").[4] Plaintiff moved from seasonal to full-time status on August 14, 2022.

On October 23, 2025, MWID initiated termination proceedings against Plaintiff. On October 27, 2025, MWID sent Plaintiff disciplinary documents, a list of allegations, and a notice of a pre-disciplinary hearing scheduled for October 29, 2025.[5] On October 28, Plaintiff requested a postponement. On October 29, MWID's legal counsel sent a letter to Plaintiff extending the date of the hearing to November 3, 2025, and stating that MWID had initiated termination proceedings against Plaintiff for cause.[6] The letter also stated that Plaintiff was placed on paid leave.

Plaintiff asserts that, throughout his employment with MWID, he "received no written warnings, performance improvement plans, or documented disciplinary actions."[7] On the other hand, Defendants contend that "[MWID] had history of performance issues with plaintiff, which were documented in daily logs, verbal communications with him, and written memorandum regarding several issues."[8] MWID asserts it terminated Plaintiff because it became aware that Plaintiff was allegedly not performing some of his job duties, including inspecting manhole covers, and that he misused company a vehicle.[9] Plaintiff alleges he was terminated because, among other things, he refused to follow certain directives that he viewed as illegal and because

---

[4] Docket No. 1 ¶¶ 14, 15.

[5] Docket No. 12-1, at 9–11.

[6] *Id.* at 15.

[7] Docket No. 1 ¶ 31.

[8] Docket No. 12, at 2.

[9] *Id.* at 2–3.

he filed a whistleblower complaint regarding misuse of public funds.[10] Plaintiff further asserts his termination was motivated by retaliation.

Defendants assert that at the November 3, 2025 hearing, MWID presented board members with the pre-disciplinary documents, provided photographs of uninspected manhole covers, and a video of Plaintiff illegally passing a school bus.[11] Defendants assert that Plaintiff was given an opportunity to answer the allegations, and that thereafter, the board voted unanimously to terminate Plaintiff for cause[12] and sent a notice of termination on November 6, 2025, which stated the date of the termination was October 31, 2025.[13] MWID asserts this date was chosen "to comport to the standard payroll cycle."[14] Plaintiff, however, seeing the effective date as October 31, concludes and alleges that MWID had already decided to terminate him on or around October 29, before the November 3 hearing took place.[15] He additionally alleges that a mere two-day notice was inadequate to sufficiently prepare for a pre-disciplinary hearing.

Plaintiff requested an appeal to the full board and a hearing was held on December 9, 2025. Defendants state that Plaintiff had an opportunity to answer the allegations, and the board asked questions. The board reconvened on December 11, 2025, and voted to affirm the original decision of termination.

Plaintiff filed this suit on January 20, 2026, alleging violations of free speech under the First Amendment, due process under the Fourteenth Amendment, the Utah Protection of Public

---

[10] Docket No. 16, at 7.

[11] Docket No. 12-1, at 5.

[12] *Id.*

[13] *Id*. at 45–48.

[14] *Id.*

[15] Docket No. 1 ¶¶ 117, 119; Docket No. 2, at 11.

Employees Act (UPPEA), and the Fair Labor Standards Act (FLSA). Plaintiff also filed the present Motion for Temporary Restraining Order and Preliminary Injunction, in which he seeks an injunction restoring him to paid administrative leave with full benefits.

## II.  DISCUSSION

To obtain a preliminary injunction or a temporary restraining order ("TRO") under Rule 65 of the Federal Rules of Civil Procedures, the movant has the burden of demonstrating: "(1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest."[16]

Additionally, to obtain an ex parte TRO, Rule 65(b) requires the moving party to provide "specific facts in an affidavit or a verified complaint [that] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."[17] Plaintiff failed to comply with Rule 65(b); and further, served Defendants the same day he filed the TRO, and Defendants have filed an opposition to the Motion. Therefore, the ex parte request is moot.

---

[16] *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007) (citing *Greater Yellowstone Coal. v. Flowers,* 321 F.3d 1250, 1255 (10th Cir. 2003)).

[17] Fed. R. Civ. P. 65(b).

"[A] preliminary injunction is an extraordinary remedy; it is the exception rather than the rule."[18] Accordingly, "the right to relief must be clear and unequivocal."[19] "The likelihood-of-success and irreparable-harm factors are 'the most critical' in the analysis."[20] "It is insufficient, moreover, that a moving party demonstrate that there is only a 'possibility' of either success on the merits or irreparable harm."[21] "If the movant fails to meet its burden on even one of the requirements for a preliminary injunction, the court should deny the request for injunctive relief."[22]

i.      Substantial likelihood of success on the merits

Plaintiff brings four claims against Defendants but only relies on one in support of his present Motion—procedural due process. To succeed on a procedural due process claim, Plaintiff must satisfy two elements: "(1) a constitutionally protected liberty or property interest, and (2) a governmental failure to provide an appropriate level of process."[23]

---

[18] *Gen. Motors Corp.*, 500 F.3d at 1226 (quoting *GTE Corp. v. Williams,* 731 F.2d 676, 678 (10th Cir. 1984)); *see also Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974) (stating that a preliminary injunction should be used in "genuinely extraordinary situation[s]").

[19] *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009) (quoting *Greater Yellowstone Coal.*, 321 F.3d at 1256).

[20] *ETP Rio Rancho Park, LLC v. Grisham*, 522 F. Supp. 3d 966, 1014 (D.N.M. 2021) (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)).

[21] *Id.* (citing *Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276 (10th Cir. 2016)).

[22] *Rose v. Utah State Bar*, No. 2:10-CV-1001-WPJ, 2010 WL 4788491, at *1 (D. Utah Nov. 17, 2010); *Davis v. Workman*, 501 F. App'x 834, 836 n.1 (10th Cir. 2012) ("Because [movant] has failed to show a likelihood of success on the merits, his motion for preliminary injunction is denied.").

[23] *Citizen Ctr. v. Gessler*, 770 F.3d 900, 916 (10th Cir. 2014).

First, Plaintiff argues he could only be fired for-cause, thus creating a property interest in his continued employment. Defendants argue that Plaintiff was an at-will employee and thus did not have any such interest.

Property interests are created and defined by independent sources such as state law, contracts, or other mutual understandings and existing rules.[24] "At-will employees lack a property interest in continued employment."[25] "Under Utah law, there is a presumption that all employment relationships entered into for an indefinite period of time are at-will."[26] Plaintiff was hired indefinitely and thus it is presumed that he is an at-will employee.[27] However, such presumption can be rebutted.[28] An employee manual may create a unilateral contract and modify the terms of the employment relation.[29]

Plaintiff argues the district manual, read as a whole, establishes that he is not an at-will employee. Plaintiff highlights Section XIII.2 which creates three types of employees: full-time, part-time, and seasonal. Within the last, it states that "[t]emporary or [l]imited employees do not

---

[24] *The Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972); *Teigen v. Renfrow*, 511 F.3d 1072, 1079 (10th Cir. 2007); *Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1085 (10th Cir. 2006).

[25] *Darr v. Town of Telluride, Colo.*, 495 F.3d 1243, 1252 (10th Cir. 2007) (citation omitted).

[26] *Ray v. Wal-Mart Stores, Inc.*, 2015 UT 83 ¶ 12, 359 P.3d 614 (citation omitted).

[27] Docket No. 16, at 2–3 (stating that "[f]ull-time employees are hired 'for an indefinite period,'" and "Plaintiff was hired as . . . full-time").

[28] *Caldwell v. Ford, Bacon & Davis Utah, Inc.*, 777 P.2d 483, 485 (Utah 1989) ("[E]mployment at will is . . . merely a presumption regarding the relationship between the parties that can be rebutted.").

[29] *Reynolds v. Gentry Fin. Corp. & Royal Mgmt.*, 2016 UT App 35, ¶ 10, 368 P.3d 96 (citing *Johnson v. Morton Thiokol, Inc.,* 818 P.2d 997, 1001 (Utah 1991); *see Reynolds*, 2016 App 35, ¶ 11 ("Employee manuals and bulletins containing policies for employee termination are legitimate sources for determining the apparent intentions of the parties and for fixing the terms of the employment relationship.") (internal quotation marks and citation omitted).

qualify for MWID benefits and shall be deemed at-will employees subject to termination with or without cause."[30] Defendant argues that by stating only seasonal or other temporary employees are deemed at will and subject to termination without cause, the manual necessarily implies that the other types of employees are not at-will and not subject to termination without cause. Further, Section X.1D states that an employee may be "involuntarily terminated for no reason (for probationary employees and Department Heads) or for cause."[31] Because Defendant is a non-probationary employee, he interprets this section as meaning he can only be fired for cause, and only after having received process as contained in the district manual.

Thus, there is some supporting evidence that Plaintiff could only be fired for-cause, which suggests that he was not an at-will employee. But, as discussed below, that evidence only creates a mere possibility, and is not clear and unequivocal.

While "[a]n employee handbook distributed to an at-will employee may modify the at-will employment relationship," an employer may also disclaim any contractual liability in the employee handbook, and "any other agreement terms must be construed in the light of the disclaimer."[32] Here, the district manual contains a disclaimer that states the manual should not be construed as a contract, as modifying any existing at-will employee status, or as creating any due process.[33] Reading the sections highlighted by Plaintiff in concert with the disclaimer makes it unclear whether the district manual created "an entitlement to a substantive right or benefit," as opposed to a mere "unilateral expectation."[34] Additional information is needed to determine the

---

[30] Docket No. 1-1, at 61.

[31] *Id*. at 51.

[32] *Reynolds*, 2016 UT App 35, ¶¶ 11, 12.

[33] Docket No. 1-1*,* at 3.

[34] *Robbins*, 438 F.3d at 1085 (reaffirming that an entitlement to nothing but procedure cannot be the basis for a property interest).

full extent of the parties' intentions when forming their employment relationship, and whether, in light of the disclaimer, the district manual communicated a manifestation of intent "sufficiently definite" such that an "employee [could] reasonably believe that the employer [was] making an offer of employment other than employment at will" and that MWID intended to be bound thereby.[35]

Even assuming Plaintiff sufficiently established a protected property interest, he has not demonstrated that he was deprived of adequate process. Plaintiff alleges he was denied process because MWID, a state entity, terminated him prior to his hearing and that the two-day notice was insufficient to adequately prepare. As evidence, Plaintiff points to the notice of termination, dated November 6, that puts October 31 as the effective date of termination. Plaintiff also emphasizes that the first letter sent to him by Defendants, dated October 27, characterized the upcoming hearing as a "[p]re disciplinary hearing," but the second letter which continued the hearing, dated October 29, stated "[MWID] has initiated termination for cause proceedings against you."[36] Plaintiff argues this evinces that Defendants had already decided to terminate him prior to the hearing.

These allegations, however, are entirely speculative. Plaintiff seemingly conflates two separate dates: the date the board resolved to terminate Plaintiff, and the date that termination became effective. The effective date being October 31, alone, does not establish that the decision to terminate him was likewise on that date or otherwise before the hearing occurred, especially in light Defendants' proffered explanation of wanting to comport to the standard payroll cycle.

---

[35] *Reynolds*, 2016 UT App 35, ¶¶ 11, 16 (concluding that the employment manual created a triable issue as to whether the employer "intended to be contractually bound" by its repeated statements regarding termination and that those statements "overshadow" the disclaimer).

[36] Docket Nos. 1-12 (Ex. L) and 1-14 (Ex. N).

Plaintiff offers no other evidence supporting that MWID decided to terminate him prior to his hearing. Likewise, Plaintiff provides no supporting legal authority suggesting that seven days[37] to prepare for a pre-termination hearing is constitutionally deficient. Accordingly, Plaintiff has not demonstrated a substantial likelihood of success on the merits of his due process claim.

III. CONCLUSION

It is therefore

ORDERED that Plaintiff's Motion for Temporary Restraining Order and Motion for Preliminary Injunction (Docket No. 2) is DENIED.

DATED May 4, 2026.

BY THE COURT:

TED STEWART
United States District Judge

---

[37] Because Plaintiff received notice of the hearing on October 27, and the October 29 hearing was postponed until November 3, Plaintiff had seven days of notice.