IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| STEVEN REX HUBER,<br><br>Plaintiff,<br>v.<br><br>MAESER WATER IMPROVEMENT DISTRICT, DUSTIN McCORMICK, and BRANDEN LAMMERT,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION AND REQUEST FOR EVIDENTIARY HEARING<br><br>Case No. 2:26-CV-00051-TS-CMR<br><br>District Judge Ted Stewart<br>Magistrate Judge Cecilia M. Romero |

This matter is before the Court on Defendants' Motion to Dismiss[1] and Plaintiff's Motion to Reconsider and Request for Evidentiary Hearing.[2] For the reasons discussed below, the Court will grant Defendants' Motion and deny Plaintiff's Motion.

## I. BACKGROUND[3]

Plaintiff was hired on February 14, 2022, by Defendant Maeser Water Improvement District ("MWID") as a full-time equipment operator and laborer working in the water and sewer departments. MWID is a special district that operates pursuant to the Water Conservancy District Act.[4] Defendant Dustin McCormick ("McCormick") is, and was, district manager for MWID

[1] Docket No. 14.

[2] Docket No. 27.

[3] The following facts are taken from Plaintiff's Complaint (Docket No. 1) and presumed true for purposes of the Motion to Dismiss.

[4] Utah Code Ann. § 17B-2a-1001 *et seq*.

during all relevant times. Defendant Branden Lammert ("Lammert") is, and was, assistant manager during all relevant times.[5]

On October 23, 2025, McCormick directed Plaintiff to leave work and provided no explanation. On October 27, 2025, McCormick sent Plaintiff a notice that a pre-disciplinary hearing would be held on October 29, 2025, to allow Plaintiff an opportunity to respond to the allegations lodged against him. The notice included a non-exhaustive list of allegations related to Plaintiff's workplace conduct, which purportedly violated MWID's policy.[6] Prior to the notice, Plaintiff had not been made aware of the allegations.

On October 28, 2025, Plaintiff requested a postponement of the hearing to have additional time to prepare, and requested copies of all evidence supporting the allegations. The next day, MWID's legal counsel sent a letter to Plaintiff extending the date of the hearing to November 3, 2025, and stating that MWID had initiated termination proceedings against Plaintiff for cause.[7] The letter also stated that Plaintiff would be placed on paid leave until the conclusion of the hearing.

The hearing was held on November 3, 2025, via Zoom. On November 6, 2025, MWID issued a written termination notification stating that Plaintiff had been terminated "for cause" effective October 31, 2025.[8] Plaintiff, seeing the effective date as October 31, alleges that MWID had already decided to terminate him on or around October 29, before the hearing took place.[9]

---

[5] Docket No. 1 ¶¶ 14, 15.

[6] Docket No. 1-12.

[7] Docket No. 1-14.

[8] Docket No. 1-16.

[9] Docket No. 1 ¶¶ 117, 119; Docket No. 2, at 11.

He alleges that his termination proceedings were in violation of MWID's own policy and that a two-day notice was inadequate to sufficiently prepare for a pre-disciplinary hearing.

Throughout his employment with MWID, Plaintiff alleges he "received no written warnings, performance improvement plans, or documented disciplinary actions."[10] Plaintiff alleges he was terminated because, among other things, he refused to follow certain directives that he viewed as illegal and because he filed a whistleblower complaint regarding misuse of public funds. Plaintiff further asserts his termination was motivated by retaliation.

Plaintiff requested an appeal of his termination, and an appeal hearing was held on December 9, 2025. Plaintiff raises a number of issues with the appeal hearing. On December 15, 2025, Plaintiff was notified that his appeal had been denied, but he was not provided with a written decision.

Plaintiff filed this suit on January 20, 2026, alleging violations of the First Amendment, the Fourteenth Amendment, the Utah Protection of Public Employees Act (UPPEA), and the Fair Labor Standards Act (FLSA). On February 11, 2026, Defendants filed the present Motion to Dismiss, which seeks dismissal of Plaintiff's Fourteenth Amendment claim.

## II. DISCUSSION

### a. *Motion to Dismiss*

When evaluating a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court accepts all well-pleaded factual allegations, as distinguished from conclusory allegations, as true and views them in the light most favorable to the non-moving party.[11] Plaintiff must provide "enough facts to state a claim to relief that is plausible on its

---

[10] Docket No. 1 ¶ 31.

[11] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

face,"[12] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[13] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[14] Accordingly, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable."[15]

In considering a motion to dismiss, a district court considers the complaint, any attached exhibits,[16] the "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[17] The court may also consider other documents "referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[18] Relevant here, Plaintiff attached MWID's Personnel Policies and Procedures Manual (the "Manual") to the Complaint.[19] The Manual is central to Plaintiff's due process claim and its authenticity is not disputed.

Plaintiff's second cause of action alleges that Defendants violated his Fourteenth Amendment due process rights by terminating him without providing the appropriate process. "[Courts] examine procedural due process questions in two steps: the first asks whether there

---

[12] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[13] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[14] *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

[15] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

[16] *Commonwealth Prop. Advocs., LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011).

[17] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[18] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

[19] Docket No. 1-1.

exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient."[20] "[I]t is only after the plaintiff first demonstrates the existence and deprivation of a protected property interest that the plaintiff is constitutionally entitled to an appropriate level of process."[21]

The sole issue before the Court is whether Plaintiff has plausibly pled that he has a protected property interest in his continued employment. Property interests are created and defined by independent sources such as state law, contracts, or other mutual understandings and existing rules.[22] Defendants assert that Plaintiff's employment was "at-will." "At-will employees lack a property interest in continued employment."[23] "Under Utah law, there is a presumption that all employment relationships entered into for an indefinite period of time are at-will."[24] Plaintiff was hired indefinitely and thus it is presumed that he is an at-will employee.[25] However, this presumption can be rebutted "by showing that the parties created an implied-in-fact contract,

---

[20] *Moore v. Bd. of Cnty. Comm'rs of Cnty. of Leavenworth*, 507 F.3d 1257, 1259 (10th Cir. 2007) (internal quotation marks citation omitted).

[21] *Tufaro v. Okla. ex rel. Bd. of Regents of the Univ. of Okla.*, 107 F.4th 1121, 1136 (10th Cir. 2024) (citation omitted).

[22] *The Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972); *Teigen v. Renfrow*, 511 F.3d 1072, 1079 (10th Cir. 2007); *Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1085 (10th Cir. 2006).

[23] *Darr v. Town of Telluride, Colo.*, 495 F.3d 1243, 1252 (10th Cir. 2007) (citation omitted).

[24] *Ray v. Wal-Mart Stores, Inc.*, 2015 UT 83 ¶ 12, 359 P.3d 614 (citation omitted).

[25] Docket No. 1-1, at 61 (stating that "[f]ull-time employees are hired 'for an indefinite period'"); Docket No. 1 ¶ 170 (alleging that Plaintiff was "a full-time, non-exempt employee").

modifying the employee's at-will status."[26] Specifically, as relevant here, "an employee handbook distributed to an at-will employee may modify the at-will employment relationship."[27]

Plaintiff argues the Manual, read as a whole, establishes that he is not an at-will employee. Specifically, he argues that the Manual creates different employee classifications and explicitly states that certain types of employees (probationary, temporary, and departments heads) are deemed at-will and subject to termination without cause. Therefore, he argues this necessarily implies that all other employees are not subject to termination without cause. He cites to the following provisions in support: Section XIII.2, which seemingly creates three types of employees: full-time, part-time, and seasonal. It then states that "[t]emporary or [l]imited employees do not qualify for MWID benefits and shall be deemed at-will employees subject to termination with or without cause."[28] Section X.1D, which states that an employee may be "involuntarily terminated for no reason (for probationary employees and Department Heads) or for cause."[29] Section III.5G, which states that "probationary employees may be terminated with or without cause and without any right to due process, notice, explanation, or appeal" during the probational period.[30]

Plaintiff also cites to Section X.3B, the termination provision, which states that involuntary terminations or separations "for Cause require MWID to provide their terminating

---

[26] *Hodgson v. Bunzl Utah, Inc.*, 844 P.2d 331, 333 (Utah 1992) (citation omitted).

[27] *Reynolds v. Gentry Fin. Corp. & Royal Mgmt.*, 2016 UT App 35, ¶ 11, 368 P.3d 96 ("[E]mployee manuals and bulletins containing policies for employee termination are legitimate sources for determining the apparent intentions of the parties and for fixing the terms of the employment relationship.").

[28] Docket No. 1-1, at 61.

[29] *Id*. at 51.

[30] *Id*. at 20.

employees with written notification of due process."[31] It specifies again that "At-Will Involuntary Terminations (for probationary employees and department heads) do not require MWID to provide their terminating employees with written notification of due process."[32]

While "[a]n employee handbook distributed to an at-will employee may modify the at-will employment relationship," "Utah law [also] allows employers to disclaim any contractual relationship that might otherwise arise from employee manuals."[33] "[W]hen an employee handbook contains a clear and conspicuous disclaimer of contractual liability, any other agreement terms must be construed in light of the disclaimer."[34] "[T]he focus of the analysis is on whether the placement of the disclaimer is sufficiently prominent to place a reasonable employee on notice that the employer was disclaiming any contractual relationship."[35] "The prominence of the text, the placement of the disclaimer, and the language of the disclaimer are all relevant factors in determining whether a disclaimer is clear and conspicuous."[36]

In *Tomlinson*, a terminated employee argued, as Plaintiff does here, that its former employer's policy created an implied-in-fact contract, which required the plaintiff's termination to follow the policy's "definitive command language regarding termination procedures."[37] At the summary judgment stage, the Utah Supreme Court found, as a matter of law, that the language expressly disclaiming contractual rights defeated the plaintiff's argument where the disclaimer

---

[31] *Id*. at 52.

[32] *Id*.

[33] *Reynolds*, 2016 UT App 35, ¶¶ 11, 12 (internal quotation marks and citation omitted).

[34] *Id*. ¶ 12 (quoting *Hodgson*, 844 P.2d at 334 (Utah 1992).

[35] *Tomlinson v. NCR Corp.*, 2014 UT 55, ¶ 28, 345 P.3d 523.

[36] *Id.* ¶ 26 (citation omitted).

[37] *Id*. ¶ 21.

was "conspicuously located at the top of the relevant policy," "prominently bolded and set apart by a text box," and therefore, "sufficiently prominent to put employees on notice of its terms."[38]

By contrast, in *Reynolds*, the Utah Court of Appeals found an employer's disclaimer was "far from being 'clear and conspicuous'" where it was not placed at the top of the relevant policy, not prominent and not bolded, and not set apart by a text box.[39] The court also highlighted that the manual contained at least ten instances of language assuring that no employee would be terminated for submitting a complaint or grievance, and that such language was frequently bolded, italicized, set apart in text boxes, punctuated with exclamation points, or written in all capital letters. The court further noted that the statements reassuring process "overshadow[ed] the four references to at-will employment in the company manuals in frequency, prominence, and placement."[40] Based on those findings, the appeals court concluded that "the employment manuals create[d] a triable issue as to whether [the employer] intended to be contractually bound."[41]

Here, the disclaimer in the Manual is similar in form, substance, and prominence to the disclaimer in *Tomlinson*: it is located near the top of the first page, is in all capital letters, appears as boldface, and states:

> THIS MANUAL IS NOT, AND SHALL NOT BE CONSTRUED AN EXPLICIT OR IMPLIED CONTRACT, SHALL NOT MODIFY ANY EXISTING AT-WILL STATUS OF ANY MWID EMPLOYEE, AND SHALL NOT CREATE ANY DUE PROCESS REQUIREMENT IN EXCESS OF FEDERAL OR STATE CONTITUTIONAL OR STATUTORY REQUIREMENTS. THE TERM AT-WILL MEANS EMPLOYEES CAN BE TERMINATED WITH OR WITHOUT CAUSE.[42]

---

[38] *Id.* ¶ 28.

[39] *Reynolds*, 2016 UT App 35, ¶ 14.

[40] *Id.* ¶ 16.

[41] *Id.*

[42] Docket No. 1-1, at 3.

Further, unlike the contract in *Reynolds*, the substantive provisions in the Manual referenced by Plaintiff are not italicized, set apart in text boxes, or otherwise prominent, such that it could possibly "overshadow" the disclaimer, particularly where the disclaimer language here is clear and conspicuous.

The Court therefore finds that, even viewing the language of the Manual in the light most favorable to the Plaintiff, the language of the disclaimer, together with its placement and form, is clear and conspicuous such that no reasonable employee could think that the provisions in the Manual are expressions of intent to enter into a modified employment relationship. The language in the Manual identified by Plaintiff certainly implies that Plaintiff is entitled to process beyond that afforded to an at-will employee. However, a "clear and conspicuous disclaimer, as a matter of law, prevents employee manuals . . . from being considered as implied-in-fact terms."[43] Accordingly, because Plaintiff fails to plausibly allege a protected property interest in continued employment, the Court will grant Defendants' Motion.

*b. Motion for Reconsideration*

Plaintiff requests that the Court reconsider its Order denying Plaintiff's Motion for Preliminary Injunction and grant an evidentiary hearing. "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice."[44] However, "it is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing."[45]

[43] *Tomlinson*, 2014 UT 55, ¶ 25.

[44] *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

[45] *Id.*

Plaintiff asserts three arguments contending that the Court committed clear error that must be addressed to prevent manifest injustice. Plaintiff's first two arguments dispute the Court's finding that Plaintiff failed to demonstrate a substantial likelihood of success on the merits regarding a protected property interest and deprived process. Having reviewed Plaintiff's arguments, the Court finds no clear error in its original analysis and will therefore not revisit the issues.

Plaintiff also argues that the Court failed to address his UPPEA and First Amendment claims as independent grounds supporting his Motion for Preliminary Injunction. Plaintiff's Motion unambiguously states that "[t]his Motion focuses on the discrete due process violation arising from Defendants' deliberate decision to schedule Plaintiff's termination to precede the . . . pre-disciplinary hearing"[46] and the factual background only discusses facts relevant to that claim.[47] Plaintiff asserts no reason why his UPPEA and First Amendment arguments could not have been raised in his initial motion. Therefore, these arguments are not appropriately considered on a motion to reconsider.

Finding no clear error or manifest injustice, the Court will deny the Motion to Reconsider.

## III. CONCLUSION

It is hereby

ORDERED that Defendants' Motion to Dismiss (Docket No. 14) is GRANTED. It is further

ORDERED that Plaintiff's Motion to Reconsider (Docket No. 27) is DENIED.

---

[46] Docket No. 2, at 2.

[47] *See id*. at 3–7.

DATED September 30th, 2026.

BY THE COURT:

TED STEWART
United States District Judge